# AUCTION PROCEDURES

By motion dated October 26, 2011, (the "Motion"),[1] Blossman Bancshares, Inc. ("BBI"), a Louisiana corporation and debtor-in-possession in a case under Chapter 11 of the United States Bankruptcy Code (the "Case"), sought approval of, among other things, the procedures pursuant to which it will determine the highest or otherwise best price for the sale (the "Sale") of all of the issued and outstanding shares of common stock (the "CPB Stock") of BBI's wholly owned subsidiary, Central Progressive Bank, a Louisiana state-chartered bank ("CPB"), pursuant to the terms of, and substantially in the form of, that certain Acquisition Agreement by and among (i) First NBC Bank Holding Company ("FNBC"), as stalking horse bidder (the "Stalking Horse Bidder"), and (ii) BBI (the "Seller"), dated as of September 27, 2011 (the "Agreement") attached to the Motion.

The following are the "Auction Procedures":

**(a)** In order to be qualified to receive any confidential information from BBI or CPB, to submit an Initial Overbid, as that term is hereinafter defined, and to participate in the Auction, a potential bidder (an "Overbidder") must submit each of the following to BBI on a timely basis:

> **(i)** An executed confidentiality agreement which shall inure to the benefit of the Successful Bidder, in a form and substance acceptable to BBI and FNBC substantially in the form of Exhibit E to the Motion; and
>
> **(ii)** Current audited financial statements and latest unaudited financial statements of the Overbidder or, if the Overbidder is an entity formed for the purpose of acquiring the CPB Stock, current audited financial

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.



statements and latest unaudited financial statements of the equity holders or sponsors of the Overbidder who will guarantee the obligations of the Overbidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow BBI to make a reasonable determination as to the Overbidder's financial and other capabilities to consummate the Sale (including, but not limited to, the ability to obtain all necessary regulatory approvals with respect to the ownership of the CPB Stock and operation of CPB on a timely basis).

(b)  In order to participate at the Auction, an Overbidder must submit the following to BBI on or before **November 11, 2011 at 3:00 p.m.** (the "Bid Deadline"):

(i)  a proposed stock purchase agreement (the "Competing Stock Purchase Agreement"), executed by the Overbidder, that (a) is on substantially the same terms and conditions as those in this Agreement, along with a redlined, marked copy showing all changes between the Competing Stock Purchase Agreement and the Agreement, (b) provides for a purchase price to be paid to BBI that exceeds the sum of the Closing Consideration, Additional Consideration and the Expense Reimbursement by at least Twenty-Five Thousand and No/100 Dollars ($25,000.00) (such total amount, the "Minimum Overbid")(i.e. the Minimum Overbid must be at least $1,325,000.00), (c) provides for the acquisition or recapitalization of CPB on terms not less favorable to CPB than the Agreement and, in any event, on terms acceptable to Governmental Authorities, (d) remains irrevocable until the conclusion of the Closing or the Bankruptcy Court

can determine that the Overbidder shall serve as a back-up bidder in the event that the highest bidder does not close (e) disclaims any right of Overbidder to receive a fee analogous to the Expense Reimbursement or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution and (f) contains a proposed closing date that is not later than November 30, 2011;

(ii) a cashier's check made payable to the order of BBI in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Overbidder's Deposit") to be submitted to counsel for BBI and to be retained by BBI as a deposit for application against the purchase price at the closing of the transaction, if the Overbidder is determined to be the highest bidder or the Bankruptcy Court determines that the Overbidder shall serve as a back-up bidder in the event that the highest bidder does not close, or to be returned to the Overbidder within three (3) calendar days of the Closing, in the event that the Bankruptcy Court does not approve a sale of the CPB Stock to the Overbidder;

(iii) be accompanied by admissible evidence in the form of affidavits or declarations establishing that the Overbidder has the financial ability to pay the purchase price set forth in the Competing Stock Purchase Agreement;

(iv) remain open until the conclusion of the Closing;

(v) contain terms and conditions that are higher and better than the terms and conditions of the Agreement as determined by the Bankruptcy

Court following a report and recommendation by BBI as to the highest and best offer;

**(vi)** provide for a purchase price to be paid to BBI that exceeds the sum of the Closing Consideration and Additional Consideration and the Expense Reimbursement by at least $25,000.00 (i.e., the Minimum Overbid must be at least $1,325,000.00);

**(vii)** be accompanied by admissible evidence in the form of affidavits or declarations establishing the Overbidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code;

**(viii)** be accompanied by admissible evidence in the form of affidavits or declarations establishing that the Overbidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Stock Purchase Agreement;

**(ix)** be accompanied by admissible evidence in the form of affidavits or declarations establishing that the Overbidder has or is capable of obtaining all required regulatory approvals to perform all of its obligations under the Competing Stock Purchase Agreement and to close the transaction not later than November 30, 2011; and

**(x)** disclaim any right of Overbidder to receive a fee analogous to the Expense Reimbursement or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution.

**(c)** FNBC, and any entity that submits a timely, conforming Competing Stock Purchase Agreement and Overbidder's Deposit (an "Initial Overbid"), as set forth above,

shall each be deemed a "Qualified Overbidder" and may bid for CPB Stock at the Auction. Any entity (other than FNBC) that fails to submit a timely, conforming Initial Overbid, as set forth above, shall be disqualified from bidding for the CPB Stock at the Auction.

**(d)** If no timely, conforming Initial Overbid is submitted, BBI shall not conduct an Auction and shall request at the Sale Hearing that the Bankruptcy Court approve this Agreement, including the Sale of the CPB Stock to FNBC, and request that the Sale Order shall be immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 62(g) of the Federal Rules of Civil Procedure;

**(e)** If one or more timely conforming Initial Overbids is received, BBI shall conduct an auction of the CPB Stock (the "Auction") at the Sale Hearing, subject to approval of the Bankruptcy Court, in which FNBC and all other Qualified Overbidders may participate. The Auction shall be governed by the following procedures:

**(i)** all Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the CPB Stock;

**(ii)** all Qualified Bidders shall be deemed to consent to provide BBI with admissible evidence in the form of affidavits or declarations establishing (A) the Qualified Bidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code, (B) the fact that the Qualified Bidder is capable and qualified, financially, legally, and otherwise, of

unconditionally performing all obligations under the Competing Stock Purchase Agreement (or this Agreement) and (C) the fact that the Qualified Bidder has or is capable of obtaining all required regulatory approvals to perform all of its obligations under the Competing Stock Purchase Agreement (or this Agreement) on or before the deadline set by BBI;

**(iii)** each bid by a Qualified Overbidder (other than FNBC) shall be automatically reduced by an amount equal to the Expense Reimbursement;

**(iv)** bidding will commence at the amount of the highest bid submitted by a Qualified Overbidder, as determined by BBI, subject to approval by the Bankruptcy Court;

**(v)** each subsequent bid shall be in increments of no less than Twenty-Five Thousand Dollars ($25,000.00);

**(vi)** FNBC shall have the right, but not the obligation, in its sole and absolute discretion, to match bids made by any Qualified Overbidder and, in such event, the FNBC's matching bid shall be deemed the highest and best bid for the CPB Stock;

**(vii)** if, upon conclusion of the Auction, and consistent with the terms of the Auction Procedures, FNBC's final bid matches or is greater than the highest bid made by any Qualified Overbidder, the Bankruptcy Court shall approve the Agreement, including the Sale of the CPB Stock to FNBC, and authorize BBI to sell the CPB Stock to FNBC; and

**(viii)** BBI may, with Bankruptcy Court approval, elect to deem FNBC's

final bid to be the highest bid, notwithstanding the receipt of an apparently higher bid from another Overbidder, if FNBC's bid, including the Expense Reimbursement, is equal to or greater than the bid of the Overbidder.

(f) FNBC has standing and is deemed to be a party in interest with standing to be heard on any motion, hearing or other matter related to this Agreement or any Overbid, or other sale of assets subject to this Agreement.