## AUCTION PROCEDURES

By motion dated October 26, 2011, (the "Motion"),[1] Blossman Bancshares, Inc. ("BBI"), a Louisiana corporation and debtor-in-possession in a case under Chapter 11 of the United States Bankruptcy Code (the "Case"), sought approval of, among other things, the procedures pursuant to which it will determine the highest or otherwise best price for the sale (the "Sale") of all of the issued and outstanding shares of common stock (the "CPB Stock") of BBI's wholly owned subsidiary, Central Progressive Bank, a Louisiana state-chartered bank ("CPB"), pursuant to the terms of, and substantially in the form of, that certain Acquisition Agreement by and among (i) First NBC Bank Holding Company ("FNBC"), as stalking horse bidder (the "Stalking Horse Bidder"), and (ii) BBI (the "Seller"), dated as of September 27, 2011 (the "Agreement") attached to the Motion.

The following are the "Auction Procedures":

**(a)** In order to be qualified to receive any confidential information from BBI or CPB, to submit an Initial Overbid, as that term is hereinafter defined, and to participate in the Auction, a potential bidder (an "Overbidder") must submit each of the following to BBI on or before **November 22, 2011 at 3:00 p.m.** (Prevailing Central Time) (the "Qualification Deadline"):

    **(i)** An executed confidentiality agreement which shall inure to the benefit of the Successful Bidder, in a form and substance reasonably acceptable to BBI and such Overbidder; and

    **(ii)** Current audited financial statements and latest unaudited financial statements of the Overbidder or, if the Overbidder is an entity formed for

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

**EXHIBIT "A"**

the purpose of acquiring the CPB Stock, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the Overbidder who will guarantee the obligations of the Overbidder, or such form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow BBI to make a reasonable determination as to the Overbidder's financial and other capabilities to consummate the Sale (including, but not limited to, the ability to obtain all necessary regulatory approvals with respect to the ownership of the CPB Stock and operation of CPB on a timely basis).

**(b)** An Overbidder who is reasonably determined by BBI, or the Court, to have the financial and other capabilities to consummate the Sale (including, but not limited to, the ability to obtain all necessary regulatory approvals with respect to the ownership of the CPB Stock and operation of CPB on a timely basis) shall be deemed a "Qualified Overbidder"). BBI shall determine whether an Overbidder shall be deemed a Qualified Overbidder within one (1) Business Day[2] of receiving the Overbidder's information. That day, BBI shall provide notice: (1) to the Overbidder, and (2) to Alesco Preferred Funding XIV, LTD, through ATP Management LLC ("Alesco"), of its determination. If there is a dispute as to whether an Overbidder is a Qualified Overbidder, the Court will decide the dispute on an expedited basis, subject to the Court's availability.

**(c)** Upon execution of a mutually agreeable confidentiality agreement, BBI shall provide each Qualified Overbidder access via an online data room to all documents previously provided to FNBC and/or regarding (i) the sale of the CPB Stock, (ii) the

---

[2] "Business Day" shall be defined as a day that is not a Saturday, Sunday or a holiday in New Orleans, Louisiana.

transfer of underlying assets of CPB, or (iii) any related transactions, and such other documents as may be reasonably agreed upon by BBI and Alesco, or ordered by the Court.

(d) In order to participate at the Auction, a Qualified Overbidder must submit the following, to BBI on or before **November 28, 2011 at 3:00 p.m.** (the "Bid Deadline"):

(i) a proposed stock purchase agreement (the "Competing Stock Purchase Agreement"), executed by the Qualified Overbidder, (a) along with a redlined, marked copy showing all changes between the Competing Stock Purchase Agreement and the Agreement, (b) that provides for a purchase price to be paid to BBI that exceeds the sum of the Closing Consideration and the Expense Reimbursement by at least Twenty-Five Thousand and No/100 Dollars ($25,000.00) (such total amount, the "Minimum Overbid")(i.e. the Minimum Overbid must be at least $625,000.00), (c) that provides for the acquisition or recapitalization of CPB on terms acceptable or likely to be acceptable to Governmental Authorities, (d) that remains irrevocable until the conclusion of the Closing or the Bankruptcy Court can determine that the Qualified Overbidder shall serve as a back-up bidder in the event that the highest bidder does not close and (e) that does not contain any right of a Qualified Overbidder to receive a fee analogous to the Expense Reimbursement or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution (f) contains a proposed closing date reasonably

acceptable to BBI and acceptable to the Regulators;

**(ii)** a cashier's check made payable to the order of BBI in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Overbidder's Deposit") to be submitted to counsel for BBI and to be retained by BBI as a deposit for application against the purchase price at the closing of the transaction, if the Overbidder is determined to be the highest bidder or the Bankruptcy Court determines that the Overbidder shall serve as a back-up bidder in the event that the highest bidder does not close, or to be returned to the Overbidder within three (3) calendar days of the Closing, in the event that the Bankruptcy Court does not approve a sale of the CPB Stock to the Overbidder;

**(iii)** remain open until the conclusion of the Closing;

**(iv)** contain terms and conditions that are higher and better than the terms and conditions of the Agreement as determined by the Bankruptcy Court following a report and recommendation by BBI as to the highest and best offer;

**(v)** provide for a purchase price to be paid to BBI that exceeds the sum of the Closing Consideration and the Expense Reimbursement by at least $25,000.00 (i.e., the Minimum Overbid must be at least $625,000.00); and

**(vi)** does not contain any right of Overbidder to receive a fee analogous to the Expense Reimbursement or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution. Collectively, the items referred to in (c)(i)-(vi) are referred to as the "Bid Package").

**(e)** The Bid Packages shall be delivered on or before the Bid Deadline to (i) Lisa Merz Hedrick, Adams and Reese LLP, 701 Poydras Street, Suite 4500, New Orleans, Louisiana 70139, counsel for BBI; (ii) Geoffrey S. Kay, Fenimore, Kay, Harrison & Ford, LLP, 111 Congress Avenue, Suite 820 Austin, Texas 78701, counsel for FNBC, and (iii) William H. Patrick, III, Heller Draper, Patrick & Horn, LLC, 650 Poydras Street, 25th Floor, New Orleans, LA 70130, counsel for Alesco.

**(f)** FNBC, and any entity that qualifies as a Qualified Overbidder and submits a Competing Stock Purchase Agreement and Overbidder's Deposit (an "Initial Overbid"), as set forth above, may bid for CPB Stock at the Auction. Initial Overbids may include related transactions similar to, or different from, the Asset Purchase Agreement and P&A Agreement identified in the Agreement, but must include a bid for the purchase of the CPB Stock.

**(g)** In the event of a dispute as to whether a bid qualifies as an Initial Overbid, the Court will resolve any unresolved dispute at or before the Auction.

**(h)** If no timely, conforming Initial Overbid is submitted, BBI shall not conduct an Auction and shall request at the Sale Hearing that the Bankruptcy Court approve the Agreement, as amended, including the Sale of the CPB Stock to FNBC, and request that the Sale Order shall be immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 62(g) of the Federal Rules of Civil Procedure;

**(i)** If one or more timely conforming Initial Overbids is received, BBI shall conduct an auction of the CPB Stock (the "Auction") at the Sale Hearing, subject to

approval of the Bankruptcy Court, in which FNBC and all other Qualified Overbidders may participate. The Auction shall be governed by the following procedures:

**(i)** all Qualified Overbidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the CPB Stock;

**(ii)** all Qualified Overbidders shall be deemed to consent to provide BBI with admissible evidence establishing (A) the Qualified Overbidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code, (B) the fact that the Qualified Overbidder is capable and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Competing Stock Purchase Agreement (or the Agreement) and (C) the fact that the Qualified Overbidder has or is capable of obtaining all required regulatory approvals to perform all of its obligations under the Competing Stock Purchase Agreement (or this Agreement) by a closing date reasonably acceptable to BBI and acceptable to the Regulators;

**(iii)** each bid by a Qualified Overbidder (other than FNBC) shall be automatically reduced by an amount equal to the Expense Reimbursement;

**(iv)** bidding will commence at the amount of the highest bid submitted by a Qualified Overbidder, as reasonably determined by BBI, subject to approval by the Bankruptcy Court; and

**(v)** each subsequent bid shall be in increments of no less than Twenty-Five Thousand Dollars ($25,000.00).